UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

REVEREND ZACHARIAH TRINGALI,
Plaintiff,

RECEIVED IN CLERK'S OFFICE
DATE 8/18/26

v.

FORD MOTOR COMPANY,
Defendant.

Civil Action No. ___________

COMPLAINT FOR VIOLATIONS OF PRIVACY RIGHTS, CONSUMER PROTECTION LAWS, AND VEHICLE SAFETY

JURY TRIAL DEMANDED

Plaintiff Reverend Zachariah Tringali, appearing pro se, brings this action against Ford Motor Company and alleges as follows:

I. INTRODUCTION

1. This action concerns the increasing integration of wireless communications, microphones, cameras, telematics, GPS/location technology. electronic control systems, remote-access functions, and software-controlled vehicle systems into modern motor vehicles.

2. Plaintiff alleges that Ford Motor Company has placed extensive connected-vehicle technology into newer Ford vehicles, including technology capable of transmitting vehicle information, driving information, location information, and certain audio/visual information.

3. Ford's own published privacy materials acknowledge that connected Ford and Lincoln vehicles may transmit vehicle-originated information to Ford, including precise vehicle location, driving information, and audio/visual information depending upon the vehicle's equipment, connectivity, software, and settings.

4. Ford further acknowledges that certain vehicles and connected services contain remote-access capabilities, including functions capable of preventing a vehicle from starting.

5. Plaintiff alleges that consumers are not provided sufficiently clear, conspicuous, and meaningful disclosure concerning the full scope of surveillance, data collection, remote-access capabilities, governmental disclosures, software-controlled vehicle functions, and the potential consequences of malfunction or unauthorized access.

6. Plaintiff further alleges that the increasing ability of manufacturers and connected-service providers to access or control critical vehicle functions creates substantial constitutional, statutory, contractual, consumer-protection, cybersecurity, and public-safety concerns.

7. The issue is particularly serious when a software, telecommunications, cybersecurity, telematics, or remote-control failure occurs while a motor vehicle is being operated on a public highway.

II. JURISDICTION AND VENUE

8. This Court has federal-question jurisdiction pursuant to 28 U.S.C. § 1331 to the extent Plaintiff's claims arise under federal law.

9. This Court has jurisdiction over federal consumer-protection and privacy claims to the extent provided by applicable federal statutes.

10. This Court has supplemental jurisdiction over related state-law claims pursuant to 28 U.S.C. § 1367.

11. Venue is proper to the extent authorized by federal law because Plaintiff resides in Massachusetts, the alleged conduct affected consumers in Massachusetts, and substantial events giving rise to the claims occurred in this District.

III. PARTIES

12. Plaintiff Reverend Zachariah Tringali is an ordained minister and outreach worker residing in Massachusetts.

13. Plaintiff brings this action individually and seeks appropriate relief for injuries and violations caused by Defendant's conduct.

14. Defendant Ford Motor Company is a Delaware corporation headquartered in Dearborn, Michigan, and manufactures and sells motor vehicles throughout Massachusetts and the United States.

IV. CONNECTED-VEHICLE SURVEILLANCE AND DATA COLLECTION

15. Ford's current Connected Vehicle Privacy Notice states that certain Ford and Lincoln vehicles contain factory-installed connectivity technology capable of wirelessly transmitting vehicle-originated data to Ford.

16. Ford identifies categories of connected-vehicle information that can include vehicle data, driving data, vehicle location, audio/visual information, media analytics, and vehicle analytics.

17. Ford's published materials specifically identify precise latitude and longitude as a category of vehicle-location information.

18. Ford also identifies voice commands and other utterances captured while a connected voice-recognition system is in an active-listen state as audio/visual information.

19. Ford states that certain information may be collected, used, analyzed, retained, or disclosed for various purposes.

20. Plaintiff alleges that the existence and operation of these systems raises significant privacy concerns for vehicle owners, drivers, passengers, and other individuals whose conversations, movements, behavior, or identifying information may be captured by connected vehicle systems.

21. A consumer's purchase or lease of a motor vehicle should not constitute unlimited consent to surveillance of every person who enters that vehicle.

22. Plaintiff alleges that Ford has failed to provide sufficiently clear and conspicuous notice concerning the precise technical capabilities, data flows, retention periods, third-party recipients, governmental disclosures, and security architecture associated with these systems.

## V. REMOTE VEHICLE CONTROL AND SAFETY

23. Ford currently markets connected security services that can provide theft alerts and remotely disable a vehicle so that it cannot be started.

24. Ford's published Security Package terms state that activation of its Start Inhibit function can prevent the engine of an associated vehicle from starting.

25. Ford further states that if a Start Inhibit command is sent while the vehicle is operating, the command will activate when the vehicle is turned off.

26. Plaintiff alleges that remote-control technology affecting critical vehicle functions creates foreseeable safety risks if improperly designed, improperly authorized, compromised, malfunctioning, or deployed without adequate safeguards.

27. Plaintiff is particularly concerned with the possibility that software, telecommunications, cybersecurity, electronic-control, or connected-service failures could interfere with the safe operation or restarting of a vehicle.

28. A motor vehicle traveling on a highway is not an ordinary consumer electronic device. A failure affecting propulsion, steering, braking, ignition, communications, or other critical systems can create risks of serious bodily injury or death.

29. Plaintiff alleges that Ford has a duty to design, test, secure, disclose, and operate such systems in a manner reasonably calculated to prevent foreseeable harm.

VI. GOVERNMENT AND LAW-ENFORCEMENT DISCLOSURES

30. Ford's privacy policy states that it may disclose personal information to law-enforcement agencies, courts, regulatory agencies, and governmental entities under specified circumstances.

31. Ford states that disclosure may occur in response to valid legal process and, under certain circumstances, exigent circumstances.

32. Plaintiff alleges that consumers must receive meaningful notice concerning when vehicle location, driving information, audio/visual information, or other connected-vehicle information may be provided to governmental entities.

33. Plaintiff further alleges that any disclosure outside constitutionally sufficient legal process, where legally required, may implicate privacy and Fourth Amendment interests.

34. Plaintiff seeks discovery concerning Ford's policies, procedures, technical systems, contracts, law-enforcement requests, disclosure protocols, emergency-disclosure procedures, and audit mechanisms.

VII. FEDERAL AND STATE CONSUMER-PROTECTION CONCERNS

35. Plaintiff alleges that representations concerning privacy, safety, security, consent, connected services, and vehicle functionality must not be materially deceptive or misleading.

36. Plaintiff alleges that undisclosed or inadequately disclosed surveillance and remote-control capabilities may constitute unfair or deceptive practices where consumers are not provided with adequate information necessary to make an informed purchasing or usage decision.

37. Plaintiff further alleges that Ford's practices should be examined under applicable federal and state consumer-protection and privacy laws.

38. The Federal Trade Commission has recently taken action concerning connected-vehicle privacy practices in the automotive industry, demonstrating that collection and use of precise location and driving-behavior information presents a recognized consumer-protection issue. The FTC's January 2025 action against General Motors specifically concerned connected-vehicle collection and disclosure of precise location and driving data.

VIII. NEGLIGENCE AND PRODUCT SAFETY

39. Ford knew or should have known that software-connected vehicles create cybersecurity, privacy, telecommunications, and operational risks.

40. Ford owed consumers a duty to exercise reasonable care in designing, manufacturing, programming, testing, securing, updating, and maintaining systems capable of collecting sensitive information or affecting vehicle operation.

41. Plaintiff alleges that Ford breached those duties by failing to implement adequate safeguards, disclosures, testing, access controls, cybersecurity protections, and failure-safe mechanisms.

42. Plaintiff further alleges that Ford failed to adequately warn consumers of reasonably foreseeable risks associated with connected vehicle technology.

IX. UNAUTHORIZED SURVEILLANCE AND PRIVACY

43. Plaintiff alleges that the collection, processing, retention, or transmission of private information through vehicle microphones, cameras, location systems, telematics systems, or other connected technology may constitute an intrusion upon legally protected privacy interests when performed without legally sufficient notice, consent, authorization, or other lawful basis.

44. Plaintiff seeks a determination of exactly what information is collected from connected vehicles, when it is collected, where it is transmitted, who receives it, how long it is retained, and under what circumstances it is disclosed.

X. REQUEST FOR FORENSIC AND TECHNICAL DISCOVERY

45. Plaintiff requests discovery concerning:

a. Ford's telematics architecture;

b. connected-vehicle data collection;

c. vehicle microphones and active-listening functionality;

d. interior and exterior cameras;

e. GPS and precise-location systems;

f. cellular modems and embedded SIM systems;

g. FordPass and related connected services;

h. remote vehicle-access functionality;

i. Start Inhibit and comparable immobilization functions;

j. cybersecurity authentication and authorization systems;

k. software-update mechanisms;

l. remote commands transmitted to vehicles;

m. records of vehicle immobilization or Start Inhibit commands;

n. records of failed, rejected, unauthorized, or malfunctioning commands;

o. law-enforcement requests for connected-vehicle information;

p. emergency or exigent-circumstance disclosures;

q. data retention policies;

r. third-party data recipients;

s. consumer consent and disclosure procedures;

t. cybersecurity incident reports;

u. vulnerability assessments and penetration testing;

v. safety testing involving connected vehicle systems; and

w. complaints concerning unintended vehicle shutdown, immobilization, loss of connectivity, surveillance, or unauthorized access.

XI. INJUNCTIVE RELIEF

46. Plaintiff requests injunctive relief requiring Ford to provide consumers with clear and conspicuous disclosures concerning:

a. every category of information collected;

b. whether microphones or cameras are operational;

c. when audio is captured;

d. when location information is transmitted;

e. who receives connected-vehicle information;

f. how long information is retained;

g. when information may be disclosed to law enforcement;

h. all remote vehicle-control functions;

i. all circumstances under which a vehicle may be prevented from starting; and

j. all safety mechanisms designed to prevent remote commands from creating a dangerous condition.

47. Plaintiff further requests appropriate safeguards requiring that safety-critical vehicle functions be protected against unauthorized remote commands and that foreseeable communications, software, or cybersecurity failures not create an unreasonable risk of death or serious injury.

XII. DAMAGES

48. Plaintiff seeks compensatory damages in an amount to be determined at trial.

49. Plaintiff seeks statutory damages where authorized by applicable law.

50. Plaintiff seeks punitive or exemplary damages where authorized by applicable law and supported by the evidence.

51. Plaintiff seeks costs, reasonable litigation expenses, and attorney's fees where authorized by statute.

XIII. PRESERVATION OF EVIDENCE

52. Plaintiff demands that Ford preserve all documents, electronically stored information, source-code records, logs, communications, technical specifications, telematics records, cybersecurity records, consumer complaints, internal investigations, safety reports, government requests, law-enforcement disclosures, and other evidence relating to the claims alleged in this Complaint.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Exercise jurisdiction over this action;

B. Declare that unlawful collection, surveillance, disclosure, or use of consumer information violates applicable law;

C. Require Ford to disclose the complete scope of connected-vehicle data collection and remote-control functionality;

D. Require appropriate safeguards against unauthorized access to safety-critical vehicle systems;

E. Award Plaintiff compensatory damages;

F. Award statutory damages where authorized;

G. Award punitive or exemplary damages where authorized;

H. Award costs and attorney's fees where permitted;

I. Order appropriate injunctive and equitable relief;

J. Require preservation and production of relevant technical and electronic records;

K. Permit appropriate expert and forensic examination of relevant connected-vehicle systems during discovery; and

L. Grant such other relief as the Court considers just and proper.

JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

XIV. PRIOR LITIGATION, CONNECTED-VEHICLE FORENSICS, AND THE GROWING SURVEILLANCE CAPABILITY OF MODERN VEHICLES

53. Plaintiff alleges that the issues presented by this action are not theoretical. Connected vehicles increasingly operate as networked computing platforms capable of collecting, storing, transmitting, and processing information concerning the vehicle, driver, passengers, communications, location, driving behavior, and surrounding environment.

54. Prior litigation has specifically raised allegations concerning Ford infotainment systems and the retention of private communications. In Jones et al. v. Ford Motor Company, No. 3:21-cv-05666, filed in 2021, Washington plaintiffs alleged that Ford infotainment systems downloaded and stored copies of text messages from smartphones connected to Ford vehicles and that forensic technology could subsequently extract those communications. Plaintiff relies

upon that litigation as evidence that the privacy implications of vehicle infotainment systems have been known and litigated for years.

55. Plaintiff does not allege that the existence of prior litigation, standing alone, establishes liability in this action. Rather, Plaintiff alleges that the prior litigation demonstrates the necessity for discovery into Ford's present-day architecture, data-retention practices, forensic accessibility, consumer disclosures, and third-party data relationships.

56. Plaintiff further alleges that modern Ford vehicles may contain multiple interconnected systems capable of generating or transmitting sensitive information, including telematics, GPS/location information, cellular communications, microphones, voice-recognition systems, infotainment systems, connected applications, vehicle diagnostics, and other electronic control systems.

57. Ford's present connected-vehicle materials acknowledge that certain Ford vehicles can use GPS location information and connected services and that Ford offers remote vehicle-security functions.

58. Ford currently advertises a Security Package containing a remote Start Inhibit function that permits an authorized user to prevent a vehicle from starting through the Ford application under specified circumstances.

59. Ford also advertises stolen-vehicle services involving vehicle tracking and cooperation with law enforcement.

60. Plaintiff alleges that any system capable of remotely affecting vehicle operation, transmitting precise location information, or providing access to vehicle-generated information must be subject to rigorous authentication, authorization, cybersecurity, logging, auditing, and safety controls.

61. Plaintiff further alleges that a consumer's acceptance of a lengthy privacy policy or connected-service agreement does not constitute unlimited consent to every conceivable collection, retention, extraction, disclosure, or governmental use of information generated by the vehicle.

XV. GOVERNMENT ACCESS AND THE FOURTH AMENDMENT

62. Plaintiff recognizes that Ford is ordinarily a private corporation and that the Fourth Amendment generally restricts governmental conduct rather than purely private conduct.

63. Plaintiff nevertheless alleges that the constitutional privacy implications become materially different when private vehicle data is collected, preserved, analyzed, extracted, or disclosed to governmental actors for investigative or law-enforcement purposes.

64. Plaintiff therefore seeks discovery sufficient to determine whether Ford has established relationships, contractual arrangements, technical interfaces, data-sharing mechanisms, emergency-disclosure procedures, or other arrangements through which governmental entities may obtain connected-vehicle information.

65. Plaintiff further seeks discovery concerning whether government agencies can obtain location information, communications, vehicle telemetry, or other information from Ford systems without a warrant, subpoena, court order, or other legally sufficient process.

66. Plaintiff does not ask this Court to assume that every disclosure to law enforcement is unlawful. Plaintiff asks the Court to determine, through discovery and applicable law, what information is disclosed, under what circumstances, pursuant to what legal authority, and with what safeguards.

67. The Supreme Court's modern Fourth Amendment jurisprudence recognizes that prolonged access to highly detailed digital location information can implicate substantial privacy interests. Plaintiff alleges that connected-vehicle technology presents comparable concerns because a vehicle can function as a persistent location and activity sensor.

XVI. AUTOMATED TRAFFIC ENFORCEMENT AND VEHICLE-BASED SURVEILLANCE

68. Plaintiff further alleges that publicly reported Ford patent applications have contemplated vehicle-based systems capable of identifying traffic violations and transmitting information concerning suspected violations to enforcement authorities.

69. Plaintiff recognizes that a patent application is not evidence that a patented concept has actually been deployed in consumer vehicles.

70. Plaintiff therefore does not allege merely that a patent application establishes current Ford surveillance practices.

71. Instead, Plaintiff seeks discovery concerning whether any Ford vehicle, software platform, connected service, third-party system, or future production architecture presently possesses or has possessed functionality capable of:

a. identifying surrounding vehicles;

b. identifying suspected speeding or traffic violations;

c. collecting photographic or video evidence;
d. transmitting information to remote servers;

e. transmitting information to governmental entities;

f. associating vehicle information with identifying information;

g. automatically generating law-enforcement alerts; or

h. otherwise converting privately owned vehicles into mobile surveillance platforms.

72. Plaintiff alleges that consumers have a legitimate privacy interest in knowing whether technology installed in a privately owned automobile is capable of monitoring persons, vehicles, communications, or conduct outside the vehicle and automatically communicating that information to governmental authorities.

XVII. CONSUMER CONSENT AND PRIVACY DISCLOSURES

73. Plaintiff alleges that the central issue is not simply whether Ford publishes a privacy policy, but whether the disclosures provided to consumers are sufficiently clear, conspicuous, specific, and understandable to constitute meaningful informed consent.

74. Plaintiff alleges that consumers should not be required to navigate complicated digital interfaces, account-verification procedures, separate applications, subscription agreements, or multiple privacy documents merely to understand or control the collection and disclosure of sensitive vehicle-generated information.

75. Plaintiff further alleges that any material difference between what an ordinary consumer reasonably understands from purchasing a vehicle and what the vehicle's software actually collects or transmits may constitute a deceptive or unfair consumer practice.

76. Plaintiff seeks discovery concerning Ford's privacy disclosures, consent architecture, opt-out mechanisms, data-sharing practices, retention policies, consumer complaints, and internal assessments of consumer understanding.

XVIII. STATE PRIVACY LAW AND CONSUMER-PROTECTION FRAMEWORKS

77. Plaintiff alleges that state privacy statutes provide important evidence of the developing legal standard governing connected-vehicle information.

78. Plaintiff specifically identifies California's privacy framework as a significant example of state regulation concerning consumer rights over personal information, including rights relating to disclosure, sale, sharing, deletion, and use of personal information.

79. Plaintiff recognizes that California privacy statutes do not automatically create a cause of action for a Massachusetts resident.

80. Plaintiff nevertheless alleges that regulatory developments concerning connected vehicles are relevant to the foreseeable privacy risks and the reasonableness of industry practices.

81. Plaintiff further alleges that state enforcement actions involving connected-vehicle manufacturers demonstrate that regulators regard automotive data collection and consumer control mechanisms as significant privacy issues.

82. Plaintiff therefore requests discovery concerning Ford's compliance programs, privacy impact assessments, consumer-rights procedures, data governance policies, and communications with state privacy regulators.

XIX. PRIVATE-ACTOR AND CONSENT DEFENSES

83. Plaintiff anticipates that Ford may argue that the Fourth Amendment does not apply because Ford is a private corporation.

84. Plaintiff alleges that such an argument cannot resolve the entirety of this action because Plaintiff's claims also concern statutory privacy rights, consumer-protection law, contractual obligations, negligence, product safety, unauthorized data practices, and the disclosure of information to third parties.

85. Plaintiff further anticipates that Ford may rely upon privacy policies, terms of service, connected-service agreements, and End User License Agreements as evidence of consent.

86. Plaintiff alleges that contractual language does not authorize conduct that is independently prohibited by statute or otherwise unlawful.

87. Plaintiff further alleges that consent obtained through inadequate, misleading, ambiguous, buried, or materially incomplete disclosures cannot necessarily constitute informed consent to the full scope of subsequent data collection and disclosure.

XX. STANDING AND CONCRETE INJURY

88. Plaintiff anticipates that Ford may challenge Plaintiff's standing by arguing that generalized concerns concerning connected vehicles do not establish an individualized injury.

89. Plaintiff therefore alleges that discovery is necessary to determine whether Plaintiff's vehicle, connected account, mobile device, communications, location information, driving information, or other personal information has actually been collected, stored, transmitted, disclosed, analyzed, or accessed by Ford or third parties.

90. Plaintiff further alleges that unauthorized acquisition, retention, transmission, or disclosure of protected information may constitute a concrete injury where recognized by the applicable statute or common law.

91. Plaintiff requests an opportunity to establish through discovery the specific data associated with Plaintiff and the specific systems through which such information was processed.

## XXI. NEED FOR FORENSIC EXAMINATION

92. Because many of the alleged practices occur within software, embedded systems, servers, telecommunications infrastructure, and electronic vehicle modules, Plaintiff alleges that ordinary consumer observation cannot establish the complete scope of Ford's data practices.

93. Plaintiff therefore requests appropriate discovery and, subject to Court supervision and applicable protective orders, forensic examination of relevant systems and records.

94. Such discovery should include, without limitation:

a. vehicle telematics logs;

b. connectivity logs;

c. GPS/location records;

d. infotainment-system records;

e. Bluetooth and USB connection records;

f. voice-recognition records;

g. microphone activation records;

h. camera activation records where applicable;

i. remote-command logs;

j. Start Inhibit records;

k. software-update records;

l. cybersecurity incident records;

m. authentication records;

n. third-party vendor records;

o. law-enforcement requests;

p. emergency disclosure records;

q. data-retention schedules;

r. consumer consent records;

s. privacy opt-out records;

t. internal privacy assessments;

u. records concerning complaints of unauthorized surveillance;

v. records concerning unintended vehicle immobilization or failure to start;

w. records concerning safety incidents involving connected services; and

x. communications concerning the development or deployment of automated law-enforcement or traffic-enforcement technologies.

XXII. PUBLIC-SAFETY DIMENSION

95. Plaintiff alleges that connected-vehicle privacy and vehicle-control issues are inseparable from public safety.

96. A vehicle traveling at highway speed is a life-safety system. Any technology capable of remotely controlling, restricting, disabling, or otherwise affecting vehicle operation must contain appropriate fail-safe mechanisms.

97. Plaintiff alleges that an erroneous remote command, unauthorized command, compromised account, telecommunications failure, software defect, cybersecurity intrusion, or system malfunction must not create an unreasonable risk of collision, injury, or death.

98. Plaintiff therefore requests discovery concerning Ford's safety engineering, failure-mode analysis, cybersecurity threat modeling, remote-command authentication, emergency overrides, and fail-safe architecture.

XXIII. RELIEF REQUESTED CONCERNING TRANSPARENCY

99. Plaintiff requests that the Court order appropriate disclosure sufficient to permit consumers to determine:

a. what information their vehicle collects;

b. whether the vehicle records or processes communications;

c. whether text messages are downloaded or stored;

d. whether voice information is retained;

e. whether location information is continuously or periodically transmitted;

f. which third parties receive vehicle-generated information;

g. when law enforcement may obtain such information;

h. what legal process is required for governmental access;

i. what remote-control capabilities exist;

j. who can issue remote commands;

k. what authentication is required;

l. what safeguards prevent unauthorized commands;

m. what happens when connected systems malfunction; and

n. how consumers can disable nonessential data collection without disabling safety-critical functions.

Respectfully submitted,

REVEREND ZACHARIAH TRINGALI
House of Mercy Ministry
Outreach Director
362 Green Street
Cambridge, Massachusetts 02129
Telephone: 603-661-9745
Email: zacharytringali@gmail.com

Plaintiff, Pro Se

Date: 8/10/2026

X [signature]

ADRESS 362 GReen ST Cambridge MA 02139